# United States District Court
# Western District of New York

SCOPE, INC., CAMILLUS SPORTSMAN'S
CLUB, INC., YATES COUNTY FEDERATION
OF CONSERVATION CLUBS, KENNETH
MATHISON, LEADLOADER ARMS, INC. doing
business as AMERICAN SPORTSMAN,

                                       Plaintiffs,

            -vs-

GOVERNOR GEORGE PATAKI, INDIVIDUALLY
AND AS GOVERNOR OF THE STATE OF NEW
YORK, ELIOT SPITZER, INDIVIDUALLY AND
AS ATTORNEY GENERAL OF THE STATE OF
NEW YORK, SUPT. JAMES W. MCMAHON,
INDIVIDUALLY AND AS SUPERINTENDANT
OF THE NEW YORK STATE POLICE,

                                Defendants.

DECISION and ORDER

04-CV-6186-CJS

## APPEARANCES

For Plaintiffs:                        Scott Garretson, Esq.
                                              252 Plymouth Ave. S.
                                              Rochester, NY 14608

For Defendants:                   Charles D. Steinman, A.A.G.
                                            New York State Attorney General's Office
                                            Department of Law
                                            144 Exchange Boulevard
                                            Rochester, NY 14614

## INTRODUCTION

Plaintiffs are challenging a statute enacted by the New York Legislature pertaining

to the sale of guns and the creation of a State database for guns sold in New York. Before

the Court are defendants' motion for judgment on the pleadings, or motion to dismiss,

pursuant to Federal Rules of Civil Procedure 12(c) and 12(b), and plaintiffs' cross-motion, also pursuant to Rule 12(c), for "partial summary judgment" and injunctive relief. For the reasons stated below, the Court partially grants and partially denies both motions.

## BACKGROUND

The issues raised in the parties' applications can be resolved at this juncture by examination of the complaint and referenced statute. As to the identity of the plaintiffs, the complaint, filed on April 23, 2004, asserts that the Shooter's Committee on Political Education, Inc. ("SCOPE") is a New York not-for-profit corporation devoted to preserving the legal possession and use of handguns, rifles and shotguns. It identifies Kenneth Mathison ("Mathison") as a New York taxpayer and president of SCOPE. It states that Camillus Sportsman's Club, Inc. ("Camillus") is a Delaware not-for-profit corporation located in Onondaga County, New York. Plaintiff Yates County Federation of Conservation Clubs ("Yates") is stated to be an unincorporated association of nine conservation clubs and sporting organizations[1] located in Yates County, New York with a principal place of business in the Town of Dundee. Finally, the complaint identifies plaintiff Leadloader Arms, Inc., doing business as American Sportsman ("Leadloader"), as a New York corporation with a principal place of business in Monroe County, New York. The defendants are various New York State officials, including the Governor and Attorney General.

---

[1]The member clubs listed in the complaint are: the Barrington Rifle Club, the Izaac Walton League (Branchport Chapter), the Yates County Sportsman's Association, Seneca Lake Duck Hunters Association, Himrod Field and Stream Conservation Club, Inc., Branchport Rod and Gun Club, Inc., Grape Country Coon Hunters Association, the Keuka Lake Renegades, and the Middlesex Conservation Club, Inc.

2

The first four causes of action in the complaint pertain to New York General Business Law sections 895, 896 and 897, all enacted as Article 39-DD-Sale of Firearms, Rifles, or Shotguns at Gun Shows (McKinney 2000). L.2000, c. 189, § 5, eff. Aug. 8, 2000. Those statutes state in relevant part as follows:

§ 895.  Definitions

For the purposes of this article:

1. "Gun show" means an event sponsored, whether for profit or not, by an individual, national, state or local organization, association or other entity devoted to the collection, competitive use, sporting use, or any other legal use of firearms, rifles or shotguns, or an event at which (a) twenty percent or more of the total number of exhibitors are firearm exhibitors or (b) ten or more firearm exhibitors are participating or (c) a total of twenty-five or more pistols or revolvers are offered for sale or transfer or (d) a total of fifty or more firearms, rifles or shotguns are offered for sale or transfer. The term gun show shall include any building, structure or facility where firearms, rifles or shotguns are offered for sale or transfer and any grounds used in connection with the event.

§ 896.  Operation of a gun show

1. A gun show operator shall:

(a) at all times during such show conspicuously post and maintain signs stating "A National Instant Criminal Background Check must be completed prior to all firearm sales or transfers, including sales or transfers of rifles or shotguns". Signs must be posted at all entrances to the gun show, at all places where admission tickets to the gun show are sold and not less than four additional locations within the grounds of the gun show;

(b) notify all firearm exhibitors in writing that a national instant criminal background check must be completed prior to all firearm sales or transfers, including sales or transfers of rifles or shotguns; and

(c) provide access at the gun show to a firearm dealer licensed under federal law who is authorized to perform a national instant criminal background check where the seller or transferor of a firearm, rifle or shotgun is not authorized to conduct such a check by (i) requiring firearm exhibitors who are firearm dealers licensed under federal law and who are authorized to conduct a national instant criminal background check to provide such a

check at cost or (ii) designating a specific location at the gun show where a firearm dealer licensed under federal law who is authorized to conduct a national instant criminal background check will be present to perform such a check at cost. Any firearm dealer licensed under federal law who performs a national instant criminal background check pursuant to this paragraph shall provide the seller or transferor of the firearm, rifle or shotgun with a copy of the United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms Form ATF F 4473 and such dealer shall maintain such form and make such form available for inspection by law enforcement agencies for a period of ten years thereafter.

2. Whenever the attorney general shall believe from evidence satisfactory to him or her that a gun show operator has violated any of the provisions of this section, the attorney general may bring an action or special proceeding in the supreme court for a judgment enjoining the continuance of such violation and for a civil penalty in an amount not to exceed ten thousand dollars. If it shall appear to the satisfaction of the court or justice that the defendant has violated any provisions of this section, no proof shall be required that any person has been injured thereby nor that the defendant intentionally violated such provision. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules. In connection with any such proposed application, the attorney general is authorized to take proof, issue subpoenas and administer oaths in the manner provided in the civil practice law and rules.

§ 897.  Sale of a firearm, rifle or shotgun at a gun show

   1. A national instant criminal background check shall be conducted and no person shall sell or transfer a firearm, rifle or shotgun at a gun show, except in accordance with the provisions of 18 U.S.C. 922(t).

2. No person shall offer or agree to sell or transfer a firearm, rifle or shotgun to another person at a gun show and transfer or deliver such firearm, rifle or shotgun to such person or person acting on his or her behalf thereafter at a location other than the gun show for the purpose of evading or avoiding compliance with 18 U.S.C. 922(t).

3. Any person who knowingly violates any of the provisions of this section shall be guilty of a class A misdemeanor punishable as provided for in the penal law.

N.Y. Genl. Bus. Law §§ 895(1), 896, 897 (McKinney's 2000).

Plaintiffs are concerned with two major aspects of these statutes. First, plaintiffs claim that "gun show" is defined so broadly that it potentially encompasses all events undertaken by their gun clubs, such as pig roasts and political rallies. Second, plaintiffs Mathison and Leadloader are concerned about a related  statutory provision concerning the creation of a State database for guns sold in New York, known as the Combined Ballistic Identification System ("CoBIS"). *See* N.Y. Genl. Bus. Law § 396-ff; N.Y. Comp. Codes R. & Regs. tit. 9, § 472.7 (2003).   Mathison claims that by attaching his name permanently to a gun he purchases, CoBIS invades his privacy, and Leadloader alleges that when it receives non-compliant weapons for sale, it will have to incriminate itself by turning those weapons over to the police pursuant to the CoBIS regulations. The first four causes of action in the complaint pertain to the definition of "gun show," and the remaining two causes of action to CoBIS.

### First Four Causes of Action

In the First cause of action, plaintiffs claim that New York General Business Law section 895 "is capable of sweeping and improper interpretation [and that] [i]t violates the Due Process clause of the Fourteenth Amendment." (Compl. ¶ 45.)

In the Second cause of action, plaintiffs assert that New York General Business Law section 895(1) "infringes upon constitutionally protected privacy interests because it purports to regulate conduct of conservation members and those attending events sponsored by the plaintiffs which is purely private in nature and which bears no relationship to any substantial interest of the State of New York." (Compl. ¶ 47.)

The Third cause of action also pertains to New York General Business Law section 895, and alleges that, "[i]f the purpose of [the statute] in so far as it designates

'events' sponsored by '[persons] devoted to the collection, competitive use, sporting use, or any other legal use of firearms, rifles or shotguns' as a 'gun show,' is to declare any assembly of gun owners anywhere for any purpose a 'gun show,' it is over broad and infringes upon the right of free speech, right to lawfully assemble, and the right to peacefully petition guaranteed by the First Amendment of the Bill of Rights." (Compl. ¶ 49.)

The Fourth cause of action states that, "General Business Law Sections 895, 896, and 897 imposes [sic] special obligations upon associations of gun owners and persons interested in gun ownership imposed upon no other 'event' sponsored by any other association of like minded persons. It violates equal protection of the law because it serves no compelling or substantial state interest by seeking to regulate 'private sales' of guns at 'events' totally unrelated to the sale or distribution of guns on the basis of the thoughts and beliefs of those who sponsor those events." (Compl. ¶ 51.)

### Ffith and Sixth Causes of Action

The Fifth cause of action is labeled as "MATHISON - TAXPAYER'S FIFTH CAUSE OF ACTION," and alleges that as a New York taxpayer, Mathison desires to purchase a handgun, but states that, "[p]ursuant to the CoBIS regulations, data relating to his purchase, including his name, address, and other personal information, will be entered into a permanent data base kept and maintained by the State of New York under the authority and at the direction of the New York State Police [and] [a]s a result, his name will become permanently attached to a handgun which, if stolen, could ultimately become implicated in a crime. Upon information and belief, no such permanent connection to a handgun would become part of his record in connection with a handgun listed upon his pistol permit under New York's current pistol permit laws." As a result, Mathison "seeks protection in

connection with the use of tax dollars for the purpose of violating privacy rights guaranteed by the United States Constitution where no compelling state interest or rational basis exists to place his name in an index of gun owners held by the New York State Police." (Compl. ¶¶ 54-58.)

In the Sixth cause of action, Leadloader alleges that New York's COBIS regulations, create the risk that Leadloader could be charged with a misdemeanor if it "should receive a noncompliant handgun and fail to process it in a timely manner." (Compl. ¶ 60.) Further, Leadloader states in this cause of action that, "[i]n order to render such handguns compliant, plaintiff Leadloader would have to testify against himself [sic]  by submitting such noncompliant guns to the New York State Police for processing [and that] [s]uch a statutory scheme violates the protections against self-incrimination afforded by the Fifth Amendment to the Bill of Rights of the United States Constitution." (Compl. ¶¶ 61-62.)

**_Plaintiffs' Prayer for Relief_**

Plaintiffs seek the following relief:

As to the First, Second, Third, and Fourth Causes of Action, declaratory judgment that the disputed portion of General Business Law 895(1) is both facially unconstitutional and unconstitutional as applied insofar as it violates the Due Process Clause of the Fourteenth Amendment and is unconstitutionally vague, that it violates the constitutional right to privacy, that it violates First Amendment rights of speech, assembly and petition, and that the statute violates the equal protection clause of the Fourteenth Amendment, And further, as to the First, Second, Third, and Fourth causes of action that the defendant Attorney General be permanently enjoined from enforcing the disputed portion of GBL 895(1). And as to the Fifth and Sixth Causes of Action, a permanent injunction directing the defendant Governor of the State of New York and defendant Commissioner of the State Police to cease spending taxpayer funds related to or in connection with the so-called CoBIS system.

(Compl. at 16.)

**STANDARDS OF LAW**

*Rule 12(b)(6) & (c) Standard*

To prevail on a motion for dismissal under Rule 12, defendant must show that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 249 (1989); *see also* 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[1][a] (Matthew Bender 3d ed.). "In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). The Court must view the complaint, and draw all reasonable inferences, in the light most favorable to the non-moving party. *Id.*; *see also* 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[1][b] (Matthew Bender 3d ed.) (court must accept plaintiff's factual allegations as true). Under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "all pleadings shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f). On a Rule 12(b)(6) motion, the issue before the Court "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

The test for evaluating a 12(c) motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Irish Lesbian and Gay Organization v. Giuliani*, 3 F.3d 638, 644 (2d Cir. 1998). "Judgment on

the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

### Summary Judgment

No litigant  in this lawsuit has requested judgment under Rule 56, though plaintiffs have mentioned summary judgment in their attorney's affidavit, attached to their Notice of Motion for judgment under Rule 12. No party has submitted the required statement of facts pursuant to Western District of New York Local Rule of Civil Procedure 56.1. As the rule states, "[f]ailure to submit such a statement may constitute grounds for denial of the motion." Nevertheless, if the Court were to consider matters outside the pleadings, it could, *sua sponte*, convert the present motions, which were brought under Rule 12, to motions for summary judgment, with notice to both sides and an opportunity to present further evidence. The Court determines in its discretion, however, not to convert these motions on the pleadings to ones for summary judgment at this time.

## DISCUSSION

As mentioned above, both parties have moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, and defendants have also moved under Rule 12(b)(6), for dismissal. Thus, the Court will consider only the complaint and the matters attached to it for purposes of its Rule 12 analysis.

Plaintiffs have alleged that the statutory definition of "gun show" is unconstitutionally vague, overbroad, violative of the Due Process clause, gives too much discretion to police and violates plaintiffs' rights to free speech, assembly and petition.

**"Gun Show" Definition Not Vague**

Plaintiffs' First cause of action claims that the statute is so vague as to be violative of the Due Process Clause of the Fourteenth Amendment. The Court disagrees. "It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Rose v. Locke*, 423 U.S. 48, 49 (1975) (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)). The Court does not agree that the statute is vague.

General Business Law section 895(1) defines a gun show as *either* "an event sponsored, whether for profit or not, by an individual, national, state or local organization, association or other entity devoted to the collection, competitive use, sporting use, or any other legal use of firearms, rifles or shotguns" *or* "an event at which (a) twenty percent or more of the total number of exhibitors are firearm exhibitors or (b) ten or more firearm exhibitors are participating or (c) a total of twenty-five or more pistols or revolvers are offered for sale or transfer or (d) a total of fifty or more firearms, rifles or shotguns are offered for sale or transfer."

While the second portion of the "gun show" definition clearly defines objective criteria by which to measure whether the event is considered by the statute a gun show, the first portion does not. However, this does not render that aspect of the definition of "gun show" vague. To the contrary, an event sponsored by plaintiffs at which no gun sales take place could, by the plain meaning of the terms used in the statute, be construed by the New York Attorney General to be a "gun show." This is important to plaintiffs since gun shows trigger the requirements of section 896, which includes the requirement to post

signs and make a federal licensed dealer available to run national instant criminal background checks. Of course, if no gun sales take place at the sponsored event, then the requirements of section 896 would be inapplicable. Plaintiffs' concern is that a pig roast sponsored by them could be deemed by the statute to be a gun show, requiring the posting of signs and availability of criminal background checks, if any informal discussion pertaining to the purchase of a firearm takes place at the sponsored event, and is then consummated by a later private sale. (*See* Compl. ¶ 44.)

Defendants respond that since the statute is in an Article entitled, "Sale of Firearms, Rifles, or Shotguns at Gun Shows," there is no possibility of mistaking a pig roast for a gun show under the terms of the statute. However, defendants cite no limiting State court opinion to that effect. *See Smith*, 415 U.S. at 573. As the Supreme Court held in a case construing a city anti-noise ordinance,

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.' Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (footnotes and internal citations omitted). Here the Court agrees with plaintiffs' position. It is indeed conceivable that

plaintiffs could sponsor a pig roast at which two individuals discuss the private sale of a gun, and the sale is later consummated, and that plaintiffs could then be found in violation of the statute for not having followed the requirements imposed by section 896 on gun show operators. That section gives the Attorney General great discretion:

> Whenever the attorney general shall believe from evidence satisfactory to him or her that a gun show operator has violated any of the provisions of this section, the attorney general may bring an action or special proceeding in the supreme court for a judgment enjoining the continuance of such violation and for a civil penalty in an amount not to exceed ten thousand dollars....

N.Y. Gen'l. Bus. Law § 896(2). On this point, in support of its determination, the Court refers to defense counsel's exchange with the Court at oral argument:

> The Court: If I'm at the pancake breakfast sponsored by a gun club and I say to you, gee, I heard you have this nifty gun, that it is for sale. Yeah, it's in the trunk here. Why wouldn't that apply?

> Defense Counsel: At the risk of taxing the Court's patience, because we say it doesn't. Because we are not going to prosecute (seek) civil actions or enforcement under that situation. In our wisdom, we have reviewed the legislature, the title and concluded these criteria set forth by Mr. Nocenti[2] apply and I'm sorry if the Court feels that procedurally that is beyond the scope of what it can consider, but I think it's important to consider that.

(Real Time Transcript of Oral Argument (Jul. 7, 2005).) With due respect to the defense, it is not the wisdom of the Attorney General that controls, but the plain text of the statute.

Additionally, citing to *Brotherhood of R.R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 528-29 (1947), defendants argue that the Court must construe the meaning of the definition by considering the title of the statute as well as the statute itself. *Id*.[3]

---

[2]Mr. Nocenti, Counsel to the New York Attorney General, filed an affidavit in support of defendants' motion.

[3]Defendants make two other arguments in addition: (1) the official position of the Attorney General of New York is that the gun sale statute applies only to events where guns are openly
(continued...)

Defendants maintain that, in the Attorney General's opinion, when viewed in context with the title, "the law regulates only events sponsored by gun organizations where guns are displayed for sale *or where arrangements for the sale of said weapons are made*." (Defs.' Mem. of Law at 5 (emphasis added).) However, *Brotherhood of R.R. Trainmen* included the following language pertaining to a court's use of the heading or title of a statute to interpret its provisions:

> But headings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text. *United States v. Fisher*, 2 Cranch 358, 386, 2 L.Ed. 304; *Cornell v. Coyne*, 192 U.S. 418, 430; *Strathearn S.S. Co. v. Dillon*, 252 U.S. 348, 354. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

*Brotherhood of R.R. Trainmen*, 331 U.S. at 528-29. Defendants also cite to *Connecticut ex rel. Blumenthal v. U.S. Dept. of Interior*, 228 F.3d 82 (2d Cir. 2000) in support of their position. However, in that case, the Second Circuit wrote, "[t]he short answer to the plaintiffs' argument is that our reliance is not on the title of § 1754, but rather on the structure of the statute." *Id*. at 89. Finally, defendants cite to *U.S. v. Roemer*, 514 F.2d

---

[3](...continued)

displayed for sale, and (2) the legislative history in the bill jacket supports this interpretation as well. However, the first position would require the Court to go outside the pleadings and defendants' second position is one that requires legal expertise normally unavailable to the ordinary citizen trying to determine whether a statute's proscriptions apply to him.

1377, 1380 (2d Cir. 1975), in which the Second Circuit stated, "the basic principle of statutory construction … gives precedence, in the event of irreconcilable conflict, to words in the body of a provision over those in the caption."

The statute is not vague. Quite the contrary, the statute is clear in its plain language. *Any* event sponsored by a gun club would constitute a gun show under the definition of the statute. Consequently, defendants' motion to dismiss the First cause of action (claiming a violation of the Due Process Clause of the Fourteenth Amendment on the grounds of vagueness), must be granted.

### Right of Privacy

Plaintiffs claim in their Second cause of action that section 895(1) violates their right to privacy, "because it purports to regulate conduct of conservation members and those attending events sponsored by the plaintiffs which is purely private in nature and which bears no relationship to any substantial interest of the State of New York." (Compl. ¶ 47.) The Court disagrees.

The Constitution does not contain any right of privacy. *Paul v. Davis*, 424 U.S. 693, 712-13 (1976). In *Paul*, the Supreme Court summarized the "zones of privacy" recognized by Supreme Court case law:

> While there is no "right of privacy" found in any specific guarantee of the Constitution, the Court has recognized that "zones of privacy" may be created by more specific constitutional guarantees and thereby impose limits upon government power. *See Roe v. Wade*, 410 U.S. 113, 152-153 (1973). Respondent's case, however, comes within none of these areas. He does not seek to suppress evidence seized in the course of an unreasonable search. *See Katz v. United States*, 389 U.S. 347, 351 (1967); *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). And our other "right of privacy" cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In *Roe* the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which

are "fundamental" or "implicit in the concept of ordered liberty" as described in *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection [—] matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.

*Paul*, 424 U.S. at 712-713. In an earlier case, involving a question presented by an appellant pertaining to his "right to privacy" in a public telephone booth, the Court wrote:

the Fourth Amendment cannot be translated into a general constitutional "right to privacy." That Amendment protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all. Other provisions of the Constitution protect personal privacy from other forms of governmental invasion. But the protection of a person's general right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States.

*Katz v. U.S.*, 389 U.S. 347, 350-51 (1967). Plaintiffs have cited no case in which a "right to privacy" has been developed from the Second Amendment, nor has the Court's research revealed any pertinent case on this point. Moreover, as the Supreme Court has clearly stated, "[a]ll cases that have considered the issues have universally held that the Second Amendment to the United States Constitution expresses a limitation that is applicable to the Congress and the National Government only and has no application to the States." *Fresno Rifle and Pistol Club, Inc. v. Van de Kamp*, 746 F. Supp. 1415, 1417 (E.D. Cal. 1990). Having determined that section 895(1) does not violate plaintiffs' privacy rights, the Court grants defendants' motion to dismiss the Second cause of action.

**"Gun Show" Definition Overbroad**

Plaintiff's Third cause of action alleges that section 895(1) is so broad that it essentially declares any assembly of gun owners for any purpose a "gun show" and

infringes on plaintiffs' right to lawfully assemble, right to free speech and right to petition

the government. The Court agrees that the statute is overbroad.

> It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. *Herndon v. Lowry*, 301 U.S. 242, 258 (1937); *Shelton v. Tucker*, 364 U.S. 479, 488 (1960); *Grayned v. City of Rockford*, 408 U.S. [104], at 116-117 [(1972)].

*Broadrick v. Oklahoma*, 413 U.S. 601, 611-612 (1973). "Facial overbreadth has not been

invoked when a limiting construction has been or could be placed on the challenged

statute." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). The Supreme Court wrote that

to invalidate a state statute that regulates harmful, or constitutionally unprotected conduct,

"the overbreadth of a statute must not only be real, but substantial as well, judged in

relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601,

615 (1973). "Where a statute's literal scope, unaided by a narrowing state court interpreta-

tion, is capable of reaching expression sheltered by the First Amendment, the doctrine

demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S.

566, 573 (1974) (footnote omitted).

> Overbreadth attacks have … been allowed where the Court thought rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations. *See Keyishian v. Board of Regents*, 385 U.S. 589 (1967); *United States v. Robel*, 389 U.S. 258 (1967); *Aptheker v. Secretary of State*, 378 U.S. 500 (1964); *Shelton v. Tucker*, *supra* [364 U.S. 479 (1960)]. Facial overbreadth claims have also been entertained where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct, *see Grayned v. City of Rockford*, supra, [404 U.S. 104] at 114-121 [1972]; *Cameron v. Johnson*, 390 U.S. [611], at 617-619 [(1968)]; *Zwickler v. Koota*, 389 U.S. 241, 249-250 (1967); *Thornhill v. Alabama*, 310 U.S. 88 (1940), and where

16

> such conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights. *See Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969); *Cox v. Louisiana*, 379 U.S. 536, 553-558 (1965); *Kunz v. New York*, 340 U.S. 290 (1951); *Lovell v. Griffin*, 303 U.S. 444 (1938).

*Broadrick v. Oklahoma*, 413 U.S. 601, 612-613 (1973). As the Supreme Court wrote in *Keyishian v. Board of Regents*, 385 U.S. 589, 602 (1967) (quoting Shelton v. Tucker, 364 U.S. 479, 488), "'even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.'"

As indicated above, the Court determines that the plain meaning of the first clause of section 895(1) defines any gathering of a gun club to be a "gun show." Since the Court is unaided by a narrowing State court interpretation, it is not persuaded by defendants' argument that by relying on the title of Article 39-DD, the first clause of section 895(1) can be interpreted in a manner that passes constitutional muster. Here, unaided by a narrowing State court interpretation, the Court finds that the first clause in the definition of a "gun show" in New York General Business Law section 895(1) is overbroad and infringes on the gun club plaintiffs' constitutionally protected rights to free speech, assembly and petition. Therefore, the Court grants plaintiffs' motion for judgment on the pleadings with respect to the Third cause of action.

### Equal Protection

In their Fourth cause of action, plaintiffs allege that New York General Business Law sections 895, 896 and 897 violate their rights to equal protection of the laws. They argue that the statutes make *any* assembly of a gun club a "gun show," subject to the

requirements and penalties of section 896, whereas a similar assembly of an organization

not described in section 895(1) would not be subject to those requirements or penalties.

The Court agrees.

As the Supreme Court explained in *Massachusetts Bd. of Retirement v. Murgia*, 427

U.S. 307 (1976), its decision in "*San Antonio School District v. Rodriguez*, 411 U.S. 1, 16

(1973), reaffirmed that Equal Protection analysis requires strict scrutiny of a legislative

classification only when the classification impermissibly interferes with the exercise of a

fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd.*

*of Retirement*, 427 U.S. at 312 (footnote omitted). The rights guaranteed by the First

Amendment are fundamental. *Id.* at 312 n.3 (citing Williams v. Rhodes, 393 U.S. 23

(1968)). To justify treating all gun club assemblies as "gun shows," New York must show

that the unequal treatment is "premised upon some compelling state interest." *San Antonio*

*Sch. Dist.*, 411 U.S. at 16 (citation omitted). Because the Court has not converted the

Federal Rule of Civil Procedure 12(c) motion to one for summary judgment, and since the

issue cannot be decided solely on the allegations contained in the pleadings, the Court

denies judgment to either side under Rule 12(c) on this cause of action, and additionally

denies defendants' application for dismissal under Rule 12(b)(6).

**CoBIS Statute**

In the Fifth cause of action, Mathison raises three theories under which he claims

the CoBIS statute is unconstitutional: first, that his name will be permanently associated

with a particular handgun, thereby violating his right to privacy; second, that taxpayer

money will be used to fund this violation; and third, that "no compelling state interest or

rational basis exists to place his name in an index of gun owners held by the New York

State Police." (Compl. ¶¶ 54-58.) Although Mathison alludes to a constitutional right to privacy, as fully discussed above, at 14, he cites no particular provision of the Constitution guaranteeing that right. Since he has no foundation for bringing a constitutional privacy claim, his second theory is also without support.

Further, his challenge to the statute on the basis of "no compelling state interest, or rational basis," cannot be resolved without reference to matters outside the pleadings. (Compl. ¶¶ 54-58) However, the Court notes that an exceedingly strong presumption of constitutionality applies to enactments of the Legislature, *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 397-98 (1937), and the term "rational basis" requires only that some rational lawmaker could logically believe that the limitation could serve a legitimate public purpose that transcends the harm to the individuals effected by the statute, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 452 (1985) (Stevens, J. concurring). In that regard, the Court further notes that in determining that a rational relationship exists between the conduct and the object of the statute, a lawmaker is free to rely not only on his own experiences and the evidence revealed as a result of his direct investigation, but also upon the experiences of other localities which have confronted the same problem at an earlier time. *City of Renton v. Playtime Theaters*, 475 U.S. 41, 50-52 (1986). Finally, the Court notes that the "rational basis" test does not allow review by a court of the wisdom of a particular piece of legislation, nor of the likelihood that the legislation will achieve the ends sought by the legislative body. *See New York State Club Assn. v. City of New York*, 487 U.S. 1 (1988); *Exxon Corp. v. Governor of Md.*, 437 U.S. 117 (1978); *Rochester Gas & Elec. Corp. v. Public Serv. Commn.*, 71 N.Y.2d 313 (1988).

In any event, as previously indicated, here, in order to ascertain the rational basis for the section 895(1), the Court would necessarily have to seek information outside the pleadings. The Court, in its discretion, chooses not to do so. Fed. R. Civ. P. 12(c).

Therefore, as to the Fifth cause of action, the Court grants defendants' application for judgment, as to Mathison's first two theories of liability. However, the Court denies judgment to either side on Mathison's theory that "no compelling state interest or rational basis exists to place his name in an index of gun owners held by the New York State Police." (Compl. ¶¶ 54-58.)

The Court now turns its consideration to the Sixth cause of action. Leadloader argues that it could be charged with a misdemeanor if it should receive a noncompliant handgun and fail to process it in a timely manner, and additionally, that the statute compels it to testify against itself by bringing a handgun to the State police even if the statutory time limits have passed. Simply put, Leadloader's argument is analogous to stating that if one violates the law, one might be subject to sanction. The Court finds Leadloader's position to be without merit. Further, on the issue of compelled self-incrimination, the Court notes that the regulations interpreting the CoBIS statute permit the gun dealer to return a non-complying firearm to the manufacturer rather than turn it into the State police. N.Y. Comp. Codes R. & Regs. tit. 9, § 472.5(a)(3)(i) (2003). The Court determines that defendants have shown Leadloader can prove no set of facts in support of his claims under the Sixth cause of action that would entitle them to relief.

**CONCLUSION**

Defendants' motion (# 11) to dismiss, or for judgment on the pleadings,  is granted in part, denied in part, and plaintiffs' Rule 12(c) cross-motion for "partial summary judgment" and an injunction (# 18) is granted in part, denied in part. Accordingly, it is hereby

ORDERED, that judgment be entered for plaintiffs on the Third cause of action as it pertains to the following language in New York General Business Law section 895(1),

> an event sponsored, whether for profit or not, by an individual, national, state or local organization, association or other entity devoted to the collection, competitive use, sporting use, or any other legal use of firearms, rifles or shotguns,

which the Court determines is unconstitutional as an overbroad restriction on plaintiff gun clubs' First Amendment rights to free speech, assembly and petition; and it is further

ORDERED, that defendants are enjoined from enforcing the following clause of New York General Business Law section 895(1):

> an event sponsored, whether for profit or not, by an individual, national, state or local organization, association or other entity devoted to the collection, competitive use, sporting use, or any other legal use of firearms, rifles or shotguns;

and it is further

ORDERED, that judgment be entered for defendants on plaintiffs' First cause of action (claiming a violation of the Due Process Clause of the Fourteenth Amendment); and it is further

ORDERED, that judgment be entered for defendants on plaintiffs' Second cause of action (claiming a violation of the right to privacy); and it is further

ORDERED, that both plaintiffs' and defendants' motions for judgment on plaintiff's

Fourth cause of action (claiming an Equal Protection violation) are denied; and it is further

ORDERED, that judgment be entered for defendants on plaintiffs' first two theories of liability under the Fifth cause of action (Matheson's taxpayer claim, but that as to plaintiffs' third theory of liability under the Fifth cause of action (no compelling state interest or rational basis) both plaintiffs' and defendants' motions for judgment are denied; and it is further

ORDERED, that judgment be entered for defendants on plaintiff's Sixth cause of action (Leadloader's CoBIS claims).

IT IS SO ORDERED.

Dated:   September 16, 2005
          Rochester, NY

                    ENTER:

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge